UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARDUST MONTE-CARLO, S.A.R.L.,

       Plaintiff,

- against -

DIAMOND QUASAR JEWELRY, INC.,

       Defendant.

**OPINION AND ORDER**

16 Civ. 9918 (ER)

Ramos, D.J.:

  Plaintiff Stardust Monte-Carlo, S.A.R.L. ("Stardust") brings this motion to dismiss the three counterclaims asserted by Defendant Diamond Quasar Jewelry, Inc. ("Diamond Quasar"). Doc. 17. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

  Stardust operates a jewelry boutique at the Hermitage Hotel in Monaco. Answer to Complaint and Counterclaims ("Countercl.") (Doc. 10) ¶¶ 30–31. Diamond Quasar is a New York corporation that creates and sells timepieces and jewelry. ¶¶ 6, 24.

  Since 2011, Stardust has assisted Diamond Quasar in a jewelry exhibition held annually in Monaco. *Id.* ¶ 25. In 2016, the annual exhibition was to be held in August in the ballroom of the Hermitage Hotel, and Stardust agreed to assist Diamond Quasar again. *Id.* ¶¶ 28–29. Stardust has alleged that its contract with Diamond Quasar entitled it to a portion of Diamond Quasar's proceeds from the August exhibition with a minimum commission of $300,000.00. *See*

---

[1] The following facts are based on the allegations in the Answer and Counterclaims, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Tommy Hilfiger Licensing Inc. v. Bradlees, Inc.*, No. 99 Civ. 4677 (WK), 2002 WL 737477, at *2 (S.D.N.Y. Apr. 25, 2002).

Compl. (Doc. 1) ¶ 11.[2]  Stardust further alleged that Diamond Quasar's sales during the exhibition were sufficiently voluminous that it is owed more than $300,000.00; despite this, it alleged that it received no remuneration whatsoever from Diamond Quasar. *Id.* ¶¶ 12–13.

On December 23, 2016, Stardust filed its Complaint in this matter, alleging breach of contract. *See* Compl.  On January 27, 2017, Diamond Quasar filed its Answer and Counterclaims, seeking damages for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective business relations. *See* Countercl. ¶¶ 24–48.  According to Diamond Quasar, during the August 2016 exhibition, one of Stardust's principals approached Diamond Quasar customers, escorted them from the hotel ballroom, and brought them to Stardust's boutique in the hotel so that he could make sales to those customers on behalf of Stardust rather than Diamond Quasar. *Id.* ¶¶ 30–31.  Diamond Quasar alleges that it lost sales to those customers and other potential customers, damaging the company by at least $1 million. *Id.* ¶¶ 32–33.  The company also denied Stardust's allegations and stated that it made no payment to Stardust because "no payments are due or owing to it." *Id.* ¶¶ 12–13.

On March 28, 2017, Plaintiff filed this motion to dismiss Diamond Quasar's counterclaims. *See* Doc. 17.

## II. LEGAL STANDARD

The applicable standard for a motion to dismiss a claim pursuant to Rule 12(b)(6) also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6). *Aspex Eyewear, Inc. v.*

---

[2] According to a document attached to Stardust's motion to dismiss, Stardust was entitled to 10% of gross sales of watches, "objects d'art," and jewelry valued from $1.00 to $199,999.00.  Stardust was also entitled to 5% of gross sales of jewelry valued from $200,000.00 to $999,999.00 and 1% of gross sales of jewelry valued above $1 million. *See* Declaration of Douglas A. Kellner in Support of Plaintiff's Motion to Dismiss ("Kellner Decl.") (Doc. 18) Ex. A.

2

*Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008); *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the counterclaim as true and draw all reasonable inferences in the non-moving party's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)) (internal quotations omitted).

### III. DISCUSSION

In support of its motion to dismiss, Stardust relies on two arguments. First, Stardust argues, the counterclaims are governed by Monégasque law. Stardust argues that the counterclaims should be dismissed because Diamond Quasar did not provide evidence showing that Monaco recognizes claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective business relations. *See* Memorandum of Law in Support of Plaintiff's Motion to Dismiss ("Pl.'s Mem.") (Doc. 19) at 3–5. Second, and in the alternative, Stardust argues that each of Diamond Quasar's three counterclaims fails to state a claim under New York law. *Id.* at 5–7.

#### A. Failure to State a Claim under Monégasque Law

Stardust argues that Diamond Quasar "has failed to state any claim under Monaco law as [D]efendant failed to establish that the counterclaims exist under the law of Monaco." Pl.'s

3

Mem. at 4. Stardust's position is that Federal Rule of Civil Procedure 44.1, which allows a court to consider "any relevant material or source . . . whether or not submitted by a party" in determining the substance of foreign law, also requires a party in its pleading to state the law that applies to each claim and to prove that its allegations state a claim under that law. *Id.* at 4–5. Stardust offers no citation for this argument.

Courts in this District have routinely held that when "parties fail to provide information as to the content of applicable foreign law, the law of the forum determines how the [substantive] issue should be resolved." *Dar El-Bina Engineering & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 383 (S.D.N.Y. 2000); *see also Shtofmakher v. David*, No. 14 Civ. 6934 (AT), 2015 WL 5148832, at *7 n.10 (S.D.N.Y. Aug. 17, 2015) ("Although Defendants' motion papers may suffice as evidence of intent to rely on foreign law, Defendants have provided no evidence concerning the substance of French or Swiss law from which the court could conclude that Plaintiff has failed to adequately plead her claims."); *Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, No. 01 Civ. 8871 (JCF), 2002 WL 1144903, at *2 (S.D.N.Y. May 29, 2002) (same). Here, Stardust does not point to any way in which Diamond Quasar's claims would fail under Monégasque law and offers only the unsupported proposition that "it is unclear that [Monaco] has a 'covenant of good faith and fair dealing' [cause of action]." Pl.'s Mem. at 4. In *Wujin Nanxiashu Secant Factory*, Magistrate Judge Francis denied a motion to dismiss based on a similarly unsupported argument based on the application of foreign law:

> The defendants have provided, however, no more than a conclusory statement of Chinese Law. They have provided no text of the statutes on which they rely, no treatises, no caselaw, and no expert affidavit supporting their interpretation. Although their memorandum of law may suffice as notice of the defendants' intent to rely on foreign law under Rule 44.1 of the Federal Rules of Civil Procedure, it falls well short of demonstrating that the complaint fails to state a cause of action under Chinese law.

4

*Wujin Nanxiashu Secant Factory*, 2002 WL 1144903, at *2. In other words, because it is Stardust, not Diamond Quasar, asserts that its counterclaims are governed by Monégasque law, it is incumbent upon Stardust to show that Diamond Quasar fails to state a claim under Monégasque law, not on Diamond Quasar to include the relevant Monégasque case law in its pleadings.[3] *See Bristol-Myers Squibb Co. v. Matrix Lab. Ltd.*, 655 F. App'x 9, 11–12 (2d Cir. 2016) (noting that the plaintiff "was not required to identify in the [second amended complaint] which law was applicable . . . [because] federal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted") (internal quotations omitted). Therefore, the Court denies Stardust's motion to dismiss Diamond Quasar's counterclaims on the basis that Diamond Quasar did not supply the relevant Monégasque law. Since neither party submitted evidence to show the substance of Monégasque law, the Court will apply New York law to determine whether Diamond Quasar's counterclaims can survive a motion to dismiss.[4]

### B. Failure to State a Claim under New York Law

Stardust also argues that each of Diamond Quasar's counterclaims should be dismissed under New York law. With respect to Diamond Quasar's claim for breach of the covenant of good faith and fair dealing, Stardust argues that since its actions could only be construed as acting "in its own interest," Diamond Quasar cannot maintain a claim against it. Pl.'s Mem. at 5;

---

[3] For its part, Diamond Quasar does not take a position on whether Monégasque law or another forum's law should apply to its counterclaims. Instead, Diamond Quasar argues that a choice of law determination is premature on a motion to dismiss, where no factual record has been developed. Defendant's Memorandum of Law ("Def.'s Mem.") (Doc. 20) at 5–8.

[4] Because the Court will apply New York law for the purposes of deciding this motion, it does not address the parties' arguments with respect to whether Monégasque law applies to their claims and/or counterclaims.

Reply Memorandum of Law in Support of Plaintiff's Motion to Dismiss ("Reply Mem.") (Doc. 21), at 4–5. Next, Stardust argues that Diamond Quasar's claim for breach of fiduciary duty must fail because Stardust did not have a fiduciary relationship with Diamond Quasar. Pl.'s Mem. at 5. Finally, Stardust argues that Diamond Quasar's claim for tortious interference fails for two reasons—first, because Diamond Quasar did not plead that Stardust committed an independently tortious or criminal act, and second, because Diamond Quasar did not point to specific costumers lost due to Stardust's interference. *Id.* at 7. The Court will address each of these arguments in turn.

### 1. Breach of the Implied Covenant of Good Faith and Fair Dealing

In its Counterclaims, Diamond Quasar alleges that Stardust breached the implied covenant of good faith and fair dealing by essentially rerouting Diamond Quasar's customers to itself. *See* Countercl. ¶ 31. Stardust argues that these allegations only show that Stardust was "act[ing] in its own interest in a way that may [have] incidentally" lessened the benefits Diamond Quasar realized from the contract. *See* Reply Mem. at 4–5 (quoting *M/A COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

Under New York law, the implied covenant of good faith and fair dealing should be enforced where "'an implied promise was so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract,' or 'where a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties.'" *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 17-1571, 2018 WL 416792, at *3 (2d Cir. Jan. 16, 2018) (quoting *M/A COM Sec. Corp.*, 904 F.2d at 136). In this case, neither party has made detailed allegations about Stardust's contractual obligations to Diamond Quasar. The exhibit appended to

Stardust's motion to dismiss discusses only the amount of commission to be paid to Stardust. *See* Kellner Decl. Ex. A. There is no dispute, however, that Plaintiff has assisted Defendant with its annual exhibition in Monaco since 2011. *See* Compl. ¶ 9 (noting that Stardust's role was to "facilitate Defendant's sales in Monaco" and to "arrange for" Diamond Quasar's annual exhibition in Monaco); Countercl. ¶¶ 25, 28 ("In 2016, Plaintiff and Defendant entered into an agreement whereby Plaintiff would assist the Defendant in connection with the exhibition by Defendant of high[-end] jewelry and timepieces at the Hotel Hermitage in the Country of Monaco from August 1, 2016 to August 28, 2016.").

Diamond Quasar argues that Stardust's conduct, as alleged in the Counterclaim, "utterly defeated the purpose of [the Stardust] contract." Def.'s Mem. at 10. In support of this argument, it cites to *Stryker Security Group, Inc. v. Elite Investigations, Ltd.*, a 2013 New York case in which the defendant (a security company) hired the plaintiff (another security company) to "coordinate and/or manage . . . security services on behalf of clients of [the defendant]." *See Stryker*, No. 151183/2013 (CRE), 2013 N.Y. Misc. LEXIS 3510, at *31 (N.Y. Sup. Ct. Aug. 8, 2013). The defendant alleged that the plaintiff "frustrated the basic purpose of the [contract] by soliciting and taking [the defendant's] clients for itself." *Id.* The New York supreme court agreed that the defendant stated a claim for breach of the implied covenant of good faith and fair dealing and denied the plaintiff's motion to dismiss the counterclaim. *Id.* at 32.

Stardust's only response to *Stryker* is that in the court's factual recitation of the case, it stated that the defendant had "engaged" the plaintiff to perform certain tasks for it. Reply Mem. at 5 (referencing *Stryker*, 2013 N.Y. Misc. LEXIS 3510, at *30). Stardust suggests that this makes *Stryker* factually distinct from the instant matter, in which "the parties simply contracted that plaintiff would 'facilitate defendant's sales in Monaco.'" *Id*. But this is a distinction

7

without a difference. In both *Stryker* and in this case, the defendant company contracted with a company in the same line of business to assist in the provision of services to its clients, and in both cases, the defendant subsequently alleged that the plaintiff used that access to divert its customers. The Court agrees with Diamond Quasar that the conduct alleged in the counterclaim, if true, frustrated the purpose of the agreement between the parties, which was to enable Diamond Quasar to rely on Stardust's assistance in facilitating sales of its jewelry in Monaco. Therefore, the Court finds that Diamond Quasar has stated a claim for breach of the implied covenant of good faith and fair dealing under New York law.

### 2. Breach of Fiduciary Duty

With respect to Diamond Quasar's breach of fiduciary duty claim, Stardust argues that it was only in a "contractual," "ordinary business relationship" with Diamond Quasar and therefore had no fiduciary duties to breach. Reply Mem. at 5.

Under New York law, a fiduciary relationship exists where one party "is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." *See Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) (citing *Mandelbatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168 (1st Dep't 1987)); *see also Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 205 (S.D.N.Y. 2016). Although it is true that the Stardust contract does not mention fiduciary duties specifically, a fiduciary duty may arise out of a contractual relationship even where the contract does not expressly state that one party will become a fiduciary of the other. *See Lemgruber*, 385 F. Supp. 2d at 224 (citing *Mandelbatt* 132 A.D.2d at 168). As discussed above, both parties agree that Stardust was obligated to assist Diamond Quasar in connection with the Monaco exhibitions. *See* Compl. ¶ 9, Countercl. ¶ 28. This relationship extended back to 2011. *See* Countercl. ¶ 25. The allegations

before the Court suggest that Stardust was under a duty to act for the benefit of Diamond Quasar with respect to the Monaco exhibition. Diamond Quasar alleges that Stardust instead acted only for its own benefit and diverted customers from Diamond Quasar to Stardust. *Id.* ¶ 37. The Court finds that, at this early stage, Diamond Quasar has plead sufficient facts to support a breach of fiduciary duty counterclaim.

### 3. Tortious Interference with Prospective Business Relations

To state a claim for tortious interference, a party must allege that: (1) it had "business relations with a third party;" (2) the opposing party "interfered with those business relations;" (3) the opposing party "acted for the sole purpose of harming" the party or used "unlawful means;" and (4) "there was a resulting injury to the business relationship." *Thome v. Alexander & Lousia Calder Found.*, 70 A.D.3d 88, 108 (1st Dep't 2009). Stardust argues that Diamond Quasar has failed to meet the first and third elements of a tortious interference claim. Specifically, it argues that Diamond Quasar has not pointed to specific customers lost as a result of Stardust's alleged interference and has not shown that Stardust's conduct amounted to a crime or independent tort. *See* Pl.'s Mem. at 7.

With respect to the first element, whether Diamond Quasar had "business relations" that Stardust disrupted, Stardust points to *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010). Reply Mem. at 6–7. In that case, the Second Circuit determined an entertainment reporter had not stated a claim for tortious interference where she stated that her "business relationships" and "professional relationships" in the news and entertainment industry had been disrupted. *DiFolco*, 622 F.3d at 115. The Second Circuit noted that a party must describe a third party with whom the complainant had "prospective business relations to be interfered with." *Id.* Stardust argues that that is precisely what Diamond Quasar has failed to do, because it did not

reference "specific third parties" with whom Stardust interfered. *See* Reply Mem. at 6–7. In response, Diamond Quasar argues that because it has not conducted discovery, it cannot be required to point to specific customers who were approached by Stardust. Def.'s Mem. at 13. Yet courts in this District are clear that where a party cannot identify specific third party relationships that were disrupted, a tortious interference claim cannot lie. *See, e.g.*, *Shah v. Lumiere*, No. 13 Civ. 2975 (LGS), 2013 WL 6283585, at *2 (S.D.N.Y. Dec. 3, 2013) ("Plaintiff has not alleged interference with a specific business relationship, which is necessary to plead sufficient allegations under the first two elements of a claim for tortious interference with prospective business relationships."); *Von Rohr Equipment Corp. v. Tanner Bolt & Nut Corp.*, No. 17 Civ. 2913 (NGG), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017) ("In order to survive a motion to dismiss, the plaintiff must allege that it was actually and wrongfully prevented from entering into or continuing in a specific business relationship.") (internal citations omitted). In its Counterclaim, Diamond Quasar only refers to damage to its "relationship with the customers and potential customers." Countercl. ¶ 47. Because Diamond Quasar has not pointed to any specific clients who were lost—or whose relationship with Diamond Quasar was otherwise interrupted—the Court will dismiss this counterclaim without prejudice.[5]

## IV. CONCLUSION

Plaintiff's motion to dismiss Defendant's counterclaims is GRANTED in part and DENIED in part. Specifically, the Court grants dismissal without prejudice of Defendants'

---

[5] With respect to the third element of the tortious interference claim, in order to survive a motion to dismiss, Diamond Quasar must allege that Stardust's conduct "amount[s] to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). As discussed above, Diamond Quasar has stated a claim for breach of fiduciary duty—i.e., and independent tort—based on the same factual allegations. Therefore, Diamond Quasar's allegations are sufficient to satisfy the third element of tortious interference.

counterclaim for tortious interference with prospective business relations, and denies dismissal of Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty. The parties are directed to appear for a status conference on Friday, March 9, 2018 at 2:00 p.m. The Clerk of Court is respectfully directed to terminate the motion (Doc. 17).

It is SO ORDERED.

Dated: February 20, 2018
        New York, New York

                                                  Edgardo Ramos, U.S.D.J.